CHARLES TAMINSKI *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued December 6, 1974—decision released April 15, 1975

*Norman Fineberg,* for the appellant (defendant Griffin Hospital).

*Thomas J. Daley,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, and *Donald E. Wasik,* assistant attorney general, for the appellee (named defendant).

LONGO, J. This is an appeal by the plaintiff's former employer, Griffin Hospital, from a judgment of the Superior Court in Litchfield County dismissing its appeal from a decision of the unemployment compensation commissioner for the fifth district awarding unemployment benefits to the plaintiff employee.

The record discloses the following facts: The plaintiff had been employed by the defendant Griffin Hospital from June 18, 1969, through February 19, 1971, and was later employed by another employer, Sun Chief, for a period of six months ending April 14, 1972. He left his job with Sun Chief for lack of transportation and applied for unemployment benefits which were awarded to him. Subsequently, when his benefit payments terminated, the plaintiff filed a new claim for benefits as of June 4, 1972. By combining the wages earned from his two different employers, Griffin Hospital and Sun Chief, the com-

missioner decided that the plaintiff had sufficient earnings in at least two quarters of his 1971 base period, which qualified him for additional benefits.

The statute applicable to this situation, General Statutes § 31-235, provided[1] in pertinent part as follows: "An unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found that . . . (3) he has been paid wages *by an employer* who was subject to the provisions of this chapter during the base period of his current benefit year in an amount at least equal to thirty times his benefit rate for the total unemployment, some part of which amount has been paid or was earned in at least two different calendar quarters of such base period." (Emphasis added.)

In appeals of this nature the court cannot substitute its discretion for that legally vested in the commissioner but determines on the record whether there is a logical and rational basis for the decision of the commissioner or whether, in the light of the evidence, he has acted illegally or in abuse of his discretion. *Bartlett* v. *Administrator,* 142 Conn. 497, 505, 115 A.2d 671; *Stapleton* v. *Administrator,* 142 Conn. 160, 165, 112 A.2d 211; *Lanyon* v. *Administrator,* 139 Conn. 20, 28, 89 A.2d 558.

The defendant hospital contends that the plain wording of the statute permits wages paid only by "an," meaning "one," employer subject to the act to be considered in determining an employee's eligibility to receive benefits. Under this interpretation, the plaintiff would not have qualified for benefits since he was not paid sufficient wages by one employer in two different quarters of his base period as required by § 31-235 (3). The basic issue,

---

[1] Subsection (3) of § 31-235 was amended by Public Acts 1973, Nos. 73-106 and 73-671.

then, is whether wages paid by more than one employer in the qualifying period can be combined in determining an employee's eligibility for unemployment benefits.

The trial court, in dismissing the defendant hospital's appeal, cited § 1-1 (f) of the General Statutes, which provides that "[w]ords importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular." The defendant hospital claims that this section, being permissive in nature, should be applied only where there is no rational ground for restricting or extending the express wording of a statute; *Levine* v. *Randolph Corporation*, 150 Conn. 232, 241, 188 A.2d 59; and claims further that, in considering the Unemployment Compensation Act as a whole, there is a rational basis for limiting the word "an" as used in § 31-235 (3) to its meaning of "one."

The legislative enactments prior to and subsequent to the enactment of § 31-235 (3) do not support the limited interpretation placed upon the statute by the defendant hospital.[2] General Statutes § 7507 (3)

---

[2] When General Statutes § 7507 (Rev. 1949) was amended by Public Acts 1953, No. 354 §§ 3 and 11, the legislature also amended § 7497 by adding subsection (e) thereto, the pertinent part of which states: "If a claimant during such base period was employed by both the state and other employers subject to the provisions of this chapter, the amount to be paid into the fund by the state, with respect to such claimant, shall be an amount equal to the amount of benefits paid to such claimant in addition to such amount as the claimant was entitled to receive on the basis of the wages paid to such claimant *by such other employers.*" (Emphasis added.) This clearly shows the legislature's intent that the wages of all base period employers are to be used to establish eligibility and is in accord with long-established administration of the Unemployment Compensation Act whereby the credits from all employers in the base period are utilized to determine a claimant's eligibility. This was not changed by § 31-235 (3).

(Rev. 1949) provided for eligibility of an employee if he were found to have "been paid wages during the base period of his current benefit year." Clearly, the statute, which was the forerunner of § 31-235, merely prescribes the period of time when wages must have been paid to an employee but does not limit the number of employers who are required to pay the wages. In 1953, § 7507 was amended to require that wages be paid "by an employer who was subject to the provision of . . . [chapter 374]." Again, the statute merely qualifies or limits the payment of wages determining eligibility for payment of benefits to those employers who are subject to the provisions of the act, thereby specifically excluding wages paid by employers who are not so covered.

It is presumed that the legislature enacts legislation in view of existing relevant statutes and intends it to be read with them so as to make one consistent body of law. *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66, and cases cited therein.

The purpose of the Unemployment Compensation Act is remedial, and its provisions are to be construed liberally as regards beneficiaries in order that it may accomplish its purpose. *Derench* v. *Administrator,* 141 Conn. 321, 324, 106 A.2d 150; see *Kelly* v. *Administrator,* 136 Conn. 482, 487, 72 A.2d 54. The legislature has emphasized this purpose in § 31-274 (c) in the following language: "The provisions of this chapter shall be construed, interpreted and administered in such manner as to presume coverage, eligibility and nondisqualification in doubtful cases."

Consequently, in light of the legislative intent as clearly expressed in the statutes, the trial court was

justified in holding that the commissioner's interpretation of the law and its application to the facts was not in error. *Levine* v. *Randolph Corporation,* supra.

There is no error.

In this opinion the other judges concurred.